Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
T. Hays, Deputy
9/21/2015 6:44:00 PM
Filing ID 6880186

1  Elan S. Mizrahi (No. 017388)
   Larry J. Crown (SBN 013133)
2  **TITUS BRUECKNER & LEVINE PLC**
   8355 East Hartford Drive, Suite 200
3  Scottsdale, Arizona  85255
   Telephone:    480-483-9600
4  Facsimile:    480-483-3215
   Email:        elan@tbl-law.com
5                lcrown@tbl-law.com
   *Attorneys for Defendants*
6

7

8            **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9              **IN AND FOR THE COUNTY OF MARICOPA**

10 JESSIE THORNTON,                      Case No.: CV2013-096393

11               Plaintiff,

12 vs.                                   **RESPONSE TO MOTION FOR LEAVE
                                         TO AMEND COMPLAINT**
13 CITY OF SURPRISE, a jural entity;
   J.J. OTTERMAN and JANE DOE
14 OTTERMAN, husband and wife, et al.,   (Assigned to the Honorable David K.
                                         Udall)
15               Defendants.

16

17        Defendants City of Surprise ("Surprise") and J.J. Otterman ("Officer Otterman") by

18 and through counsel undersigned, hereby submit their response in opposition to Plaintiff's

19 Motion for Leave to Amend Complaint. Simply put, Plaintiff has unduly delayed seeking

20 his amendment to add six more counts to his one count Complaint and doing so now would

21 be unduly prejudicial. This Response is supported by the following Memorandum of Points

22 and Authorities and the Court's record.

23           **MEMORANDUM OF POINTS AND AUTHORITIES**

24 **I.      BACKGROUND**

25        Before midnight on December 7, 2012, Officer Otterman, a Surprise police officer,

26 arrested Plaintiff for DUI. Officer Otterman had observed Plaintiff driving his white

27 Mitsubishi westbound on Bell Road and when Plaintiff crossed over a painted white-striped

28 divider on multiple occasions, Officer Otterman instituted a traffic stop. Officer Otterman

*(Left margin, vertical text)* **TITUS BRUECKNER & LEVINE PLC** 8355 East Hartford Drive – Suite 200 Scottsdale, AZ  85255 480-483-9600

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

explained to Plaintiff that he was stopped for failing to maintain his lane of travel. Plaintiff immediately began yelling at Officer Otterman stating that he was not speeding. Officer Otterman repeated that Plaintiff was stopped for failing to maintain his lane of travel and not for speeding. Plaintiff continued to yell at Officer Otterman, stating that he was traveling 43 mph and was not speeding.

Officer Otterman observed that Plaintiff had bloodshot eyes and asked him to submit to field sobriety tests to determine impairment. Plaintiff then exited his vehicle, continuing to yell and argue that he was not impaired and had not consumed any alcohol. Plaintiff then assumed an aggressive posture and was handcuffed. While in handcuffs Plaintiff refused to obey commands to sit on the curb so Officer Otterman and another officer escorted Plaintiff to the curb in a seated position. Plaintiff finally agreed to calmly submit to sobriety tests so the officers removed the handcuffs.

Plaintiff voluntarily participated in field sobriety tests and told the officers that he had no injuries that would prevent him from completing the tests. During the tests, Officer Otterman observed that Plaintiff had multiple fails so he asked Plaintiff if he had consumed any drugs or medication. Plaintiff then admitted that he had taken 10mg of Quinapril earlier in the day for his blood pressure. Quinapril is a prescription medication that can cause dizziness and it is advised that users not drive or do any activity that requires alertness until the user can be sure that such activities can be safely performed.

Officer Otterman ultimately communicated to Plaintiff that he believed that Plaintiff was impaired based on Plaintiff's: (1) failure to maintain his lane of travel on several occasions; (2) failure to understand the reason for the stop; (3) bloodshot eyes; (4) failed field sobriety test results; and (5) Plaintiff's admission of taking prescribed medication.

Officer Otterman arrested Plaintiff and transported him to the police station. Plaintiff voluntarily consented to a blood draw. A drug-recognition officer saw no signs of drug impairment by the time Plaintiff was tested at the station. Officer Otterman checked with his supervisor and then charged Plaintiff. Plaintiff was then released to his wife with no booking. The charges against Plaintiff for DUI were promptly dropped when his blood

**TITUS BRUECKNER & LEVINE PLC**
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

results were returned without evidence of drugs or alcohol.

Plaintiff is suing Surprise and Officer Otterman for a single legal claim he styles as "negligence/gross negligence." He claims he was the target of "racial profiling and harassment" by Surprise because, over a period of approximately 4 years, he had been stopped by <u>different</u> Surprise officers, with most stops resulting in the issuance of warnings. He had not been stopped within 2 years of the date of his DUI arrest in 2013.

Plaintiff now seeks to amend his Complaint to add two federal claims under § 1983 for violations of his 4th and 14th Amendment rights, and four common-law claims for intentional infliction of emotional distress, false imprisonment, abuse of process and malicious prosecution. He intends to now seek attorneys' fees under § 1988.

When discovery was in its infancy last year, Plaintiff first suggested he was going to amend his Complaint. Specifically, on May 7, 2014, Plaintiff's counsel emailed: "I intend to amend the Complaint to state a 1983 claim." Defense counsel told Plaintiff's counsel that if Plaintiff would add federal claims, the claims would be removed to Federal Court. Plaintiff did not move to amend, so Surprise and Officer Otterman sought to take Plaintiff's deposition. Defendants also submitted an Offer of Judgment on April 11, 2014.

Plaintiff was not available to be deposed for the entirety of the summer, and by the end of the summer, Gallagher & Kennedy stepped in as co-counsel for Plaintiff.

On November 3, 2014, when defense counsel again inquired about scheduling Plaintiff's deposition, Plaintiff's new co-counsel emailed: "actually, we are in the process of amending the Complaint. I wanted to make sure you had a copy of the Amended Complaint before Mr. Thornton's deposition. We should have it to you within the next 10 days or so." Surprise and Officer Otterman wanted to make sure that the amendment of the Complaint would occur before the key witness depositions so as to make sure to cover all claims in the key witness deposition process.

By the spring of this year, Plaintiff had not moved to amend his Complaint despite threatening to do so for nearly a year. To avoid further delay, the parties proceeded with taking Plaintiff's deposition along with the depositions of Officer Otterman and Sgt.

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

Boothe, the drug-recognition expert. Plaintiff's deposition took place on March 23, 2015 and the two police officer's depositions took place on April 17, 2015. Plaintiff finally filed a Motion to Amend the Complaint three weeks ago, after the completion of the key witness depositions and at a point where discovery is almost closed. The proposed Amended Complaint would result in removal to Federal Court and the prospect of redoing at least Plaintiff's deposition and starting over with a new schedule. **Plaintiff has no more information today about his case than he did more than 16 months ago when he first suggested he was going to amend his Complaint.**

Moreover, and perhaps more importantly, adding Federal claims at this point is an effort to try to bootstrap a large attorneys' fee claim to a nominal damages claim. Plaintiff was properly stopped on suspicion of DUI and was properly arrested. Officer Otterman believed Plaintiff had been driving under the effects of drugs (not alcohol) based upon his erratic behavior. When Plaintiff's BAC came back at 0.00%, Officer Otterman was not surprised because he believed Plaintiff was impaired by drugs (and Plaintiff admitted to taking at least one drug), not alcohol. When Sgt. Boothe, the drug-recognition expert, stated he did not see signs of drug impairment from Plaintiff, Officer Otterman, after consulting with his supervising officer, Sgt. Klarkowski, charged Plaintiff with DUI, believing the drug symptoms had waned but could still show up in the blood results. The charges were promptly dismissed when the blood results came back negative. The only basis by which there could be a finding of liability in this case arises from the charge – not the stop or the arrest. At the time of Plaintiff's deposition, Plaintiff confirmed he had not disclosed a single dollar of damage arising from any of his claims, so at best, Plaintiff may claim nominal or general damages associated with being subject to a DUI charge for less than two months that was ultimately dismissed and taken off his record.

On April 11, 2014, Surprise and Officer Otterman sent to Plaintiff an Offer of Judgment. The Offer of Judgment has long since expired. Surprise and Officer Otterman believe Plaintiff may ultimately seek a nominal damages award and then try to assert a large attorneys' fees claim by virtue of adding the federal claims and including a claim for fees

under § 1988 and potentially avoid the expired Offer of Judgment.

## II.    ANALYSIS

Rule 15(a) provides in relevant part, [a] party may amend party's pleading once as a matter of course and any time before a responsive pleading is served . . . . Otherwise, a party may amend the party's pleading only by leave of Court or by written consent of the adverse party." However, "[w]hile leave to amend should be freely granted in the interest of justice, the right to amend is not automatic." *Matter of Estate of Tortstenson,* 125 Ariz. 373, 609 P.2d 1073 (1980) "denying leave to amend is not an abuse of discretion when there is undue delay, repeated failure to cure deficiencies through previous amendments, undue prejudice, or when the amendment would be futile." *Hayden U.S. Ctr. Condos, Assn. v. Pegasus Dev. Corp.,* 209 Ariz. 511, 105 P.3d 157 (App. 2005), overruled in part on other grounds, *Lofts at Filmore Condo Assn. v. Reliance Commer. Constr.,* 218 Ariz. 574, 190 P.3d 733 (2008). In *Spitz v. Bache & Co.,* 122 Ariz. 530, 596 P.2d 365 (1979), the court defined prejudice as follows: "[P]rejudice is the single 'inconvenience and delay suffered when the amendment raises new issues or inserts new parties into the litigation'."

Here, Plaintiff's own threats of amendment dating back to May of 2014 evidence his undue delay. Plaintiff cites no reason he could not have amended his Complaint either when he first said he was going to do so in May of 2014, or after he added new co-counsel and his new co-counsel threatened to amend in November of 2014, all of which was before the key depositions and within the parameters of the litigation schedule. Plaintiff now seeks to expand his Complaint from One Count to Seven Counts by adding two Federal claims and four intentional tort claims. Adding the Federal claims will result in a removal of this case to Federal Court and the undoing of nearly two years of litigation, and adding the additional intentional tort claims will require a re-deposition of Plaintiff. Adding claims that could result in vast attorneys' fees being added to a nominal damages claim would also require the re-evaluation of strategies for the case. Interestingly, Plaintiff on the one hand says there is no prejudice because Defendants have been "on notice" of Plaintiff's claims for a long time, but on the other hand, he alleges "new discovery", none of which has been articulated,

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

- 5 -

somehow precluded Plaintiff from previously amending. That irreconcilable position makes no sense. The reality is that Plaintiff could have initially filed a Complaint containing whatever claims he thought he wanted to make, and he has been saying he is going to add Federal claims for more than a year. There is simply no explanation for waiting until virtually the close of discovery for this amendment.

Lastly, futility is a basis to deny a Motion to Amend. Plaintiff now seeks to add multiple intentional tort theories, yet there is no scintilla of evidence that Officer Otterman intentionally caused any damages to Plaintiff. Officer Otterman had no idea who Plaintiff was at the time he pulled him over and was not even on the police force the previous time Plaintiff had been pulled over two years prior. Plaintiff cites no evidence to support these intentional tort claims and to the extent those claims arise from conduct prior to the December 2013 stop, they will be precluded by the Notice of Claim statute and the statute of limitations.

## III.    CONCLUSION

In Summary, Plaintiff wants to add six counts to a One-Count Complaint, and there is no evidentiary basis for the intentional tort claims he seeks to add. This is nothing more than an effort to vastly expand the litigation and to use attorneys' fees as a driving force for an otherwise nominal damages claim and to potentially try to circumvent an expired Offer of Judgment. For these reasons, Plaintiff's Motion should be denied.

DATED this 21st day of September, 2015.

**TITUS BRUECKNER & LEVINE PLC**


By: /s/ Elan S. Mizrahi
    Larry J. Crown
    Elan S. Mizrahi
    *Attorneys for Defendants*

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

ORIGINAL of the foregoing filed
electronically via AZTurboCourt on this
__21st__ day of September, 2015 with:

The Clerk of the Court
Maricopa County Superior Court
201 West Jefferson Street
Phoenix, Arizona  85003-2243

COPY of the foregoing delivered
electronically this _21st__ day of
September, 2015 to:

The Honorable David K. Udall

COPY of the foregoing emailed  and
mailed on this  __21st__ day of September,
2015 to:

Kevin D. Neal
Lincoln Combs
Liana J. Garcia
Gallagher & Kennedy, PA
2575 East Camelback Road
Phoenix, AZ  85016-9225

Marc J. Victor
Marc J. Victor, PC
3920 S. Alma School Road, Suite 5
Chandler, AZ  85248

/s/ *Karin A. Meister*
_____
8962-004

*(left margin, rotated)* **TITUS BRUECKNER & LEVINE PLC**
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

- 7 -

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
K. Tiero, Deputy
9/22/2015 8:00:00 AM
Filing ID 6875430

1   Kevin D. Neal (Bar No. 011640)          Marc J. Victor (Bar No. 016064)
    Lincoln Combs (Bar No. 025080)          Marc J. Victor, P.C.
2   Liana J. Garcia (Bar No. 027452)        3920 S. Alma School Road, Suite 5
    GALLAGHER & KENNEDY, P.A.               Chandler, Arizona 85248
3   2575 East Camelback Road                Telephone:  (480) 455-5233
    Phoenix, Arizona  85016-9225            Fax:  (480) 857-0150
4   Telephone:    (602) 530-8000            marc@attorneyforfreedom.com
    Facsimile:    (602) 530-8500
5   kevin.neal@gknet.com
    lincoln.combs@gknet.com
6   liana.garcia@gknet.com

7   Attorneys for Plaintiff Jessie Thornton

8                   SUPERIOR COURT OF THE STATE OF ARIZONA

9                            COUNTY OF MARICOPA

10  JESSIE THORNTON,                        No. CV2013-096393

11                  Plaintiff,              ORDER

12  v.                                      (Assigned to the Honorable David K.
                                            Udall)
13  CITY OF SURPRISE, a jural entity; J.J.
    OTTERMAN and JANE DOE
14  OTTERMAN, husband and wife; JOHN
    and JANE DOES I-X; BLACK and WHITE
15  CORPORATIONS I-X, inclusive,

16                  Defendants.

17

18          Upon consideration of the parties' Stipulation to Extend Mediation Deadline, the

19  Court orders that the current deadline of September 18 shall be extended ninety (90) days

20  through and including December 18, 2015.

21

22          DATED this ___ day of _____, 2015.

23

24
                            By:_____
25                              HONORABLE DAVID K. UDALL

26

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

Filing ID: 6875430   Case Number: CV2013-096393
Original Filing ID: 6874867

**Granted as Submitted**



/S/ David Udall Date: 9/18/2015
_____
Judicial Officer of Superior Court

# ENDORSEMENT PAGE

CASE NUMBER: CV2013-096393            SIGNATURE DATE: 9/18/2015

E-FILING ID #: 6875430                FILED DATE: 9/22/2015 8:00:00 AM


ELAN MIZRAHI


RICHARD ALBERT CRUZ


JESSICA OTTERMAN
NO ADDRESS ON RECORD

Michael K. Jeanes, Clerk of Court
*** Filed ***
09/24/2015 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-096393                                          09/21/2015


                                          CLERK OF THE COURT
HON. DAVID K. UDALL                            K. Tiero
                                               Deputy



JESSIE THORNTON                    RICHARD ALBERT CRUZ

v.

CITY OF SURPRISE, et al.           ELAN MIZRAHI



                                   JESSICA OTTERMAN
                                   NO ADDRESS ON RECORD



**TELEPHONIC TRIAL SCHEDULING CONFERENCE RESET**


        The Court having granted the parties' Stipulation to Extend the Mediation Deadline
through December 18, 2015,

        **IT IS ORDERED** vacating the telephonic Trial Scheduling Conference set on October
23, 2015 at 10:30 a.m. and resetting same to **January 8, 2016 at 1:30 p.m. (15 minutes
allotted)** for the purpose of assigning a trial date if this case has not settled.  Counsel for the
Plaintiff is to initiate the telephonic conference by first arranging the presence of all other
counsel or self-represented parties on the conference call and by calling this Division at (602)
506-5514 promptly at the scheduled time.


Docket Code 083                    Form V000A                          Page 1

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
S. Bagnall, Deputy
9/30/2015 12:54:00 PM
Filing ID 6901132

1    Kevin D. Neal (Bar No. 011640)
     Lincoln Combs (Bar No. 025080)
2    Liana J. Garcia (Bar No. 027452)
     GALLAGHER & KENNEDY, P.A.
3    2575 East Camelback Road
     Phoenix, Arizona  85016-9225
4    Telephone:    (602) 530-8000
     Facsimile:    (602) 530-8500
5    kevin.neal@gknet.com
     lincoln.combs@gknet.com
6    liana.garcia@gknet.com

7    Marc J. Victor (Bar No. 016064)
     Marc J. Victor, P.C.
8    3920 S. Alma School Road, Suite 5
     Chandler, Arizona 85248
9    Telephone:  (480) 455-5233
     Fax:  (480) 857-0150
10   marc@attorneyforfreedom.com

11   Attorneys for Plaintiff Jessie Thornton

12

13             **SUPERIOR COURT OF THE STATE OF ARIZONA**

                  **COUNTY OF MARICOPA**
14

| | |
|---|---|
| 15   JESSIE THORNTON, | No. CV2013-096393 |
| 16           Plaintiff, | **NOTICE OF WITHDRAWAL OF PLAINTIFF'S MOTION TO COMPEL** |
| 17   v. | |
| 18   CITY OF SURPRISE, a jural entity; J.J. OTTERMAN and JANE DOE | (Assigned to the Honorable David K. Udall) |
| 19   OTTERMAN, husband and wife; JOHN and JANE DOES I-X; BLACK and WHITE | |
| 20   CORPORATIONS I-X, inclusive, | |
| 21          Defendants. | |

22

23        Plaintiff Jessie Thornton hereby moves to withdraw his Motion to Compel filed on

24   August 21, 2015 as the parties have reached an agreement to resolve the discovery

25   dispute.

26

DATED this 30th day of September, 2015.

GALLAGHER & KENNEDY, P.A.


By: */s/ Liana J. Garcia*
    Kevin D. Neal
    Lincoln Combs
    Liana J. Garcia
    2575 East Camelback Road
    Phoenix, Arizona  85016-9225
    Attorneys for Plaintiff Jessie Thornton

COPY mailed same day to:

Larry J. Crown, Esq.
Elan S. Mizrahi, Esq.
TITUS, BRUECKNER & LEVINE PLC
8355 East Hartford Drive, Suite 200
Scottsdale, Arizona 85255
E-mail: lcrown@tbl-law.com
E-mail: elan@tbl-law.com
*Attorneys for Defendants*

Sharlee Weaver

5065730v1/26076-0001

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
K. Tiero, Deputy
10/1/2015 8:00:00 AM
Filing ID 6901748

***See eSignature page***

1   Kevin D. Neal (Bar No. 011640)          Marc J. Victor (Bar No. 016064)
    Lincoln Combs (Bar No. 025080)          Marc J. Victor, P.C.
2   Liana J. Garcia (Bar No. 027452)        3920 S. Alma School Road, Suite 5
    GALLAGHER & KENNEDY, P.A.               Chandler, Arizona 85248
3   2575 East Camelback Road                Telephone:  (480) 455-5233
    Phoenix, Arizona  85016-9225            Fax:  (480) 857-0150
4   Telephone:   (602) 530-8000             marc@attorneyforfreedom.com
    Facsimile:   (602) 530-8500
5   kevin.neal@gknet.com
    lincoln.combs@gknet.com
6   liana.garcia@gknet.com

7   Attorneys for Plaintiff Jessie Thornton

8                  **SUPERIOR COURT OF THE STATE OF ARIZONA**

9                         **COUNTY OF MARICOPA**

10
    JESSIE THORNTON,                        No. CV2013-096393
11
                      Plaintiff,            **ORDER TO WITHDRAW**
12                                          **PLAINTIFF'S MOTION TO**
                                            **COMPEL**
    v.
13
    CITY OF SURPRISE, a jural entity; J.J.  (Assigned to the Honorable David K.
14  OTTERMAN and JANE DOE                    Udall)
    OTTERMAN, husband and wife; JOHN
15  and JANE DOES I-X; BLACK and WHITE
    CORPORATIONS I-X, inclusive,
16
                      Defendants.
17

18          The Court having considered Plaintiff's Notice of Withdrawal of Plaintiff's Motion

19  to Compel,

20          IT IS HEREBY ORDERED that Plaintiff's Motion to Compel is withdrawn.

21

22          DATED this ___ day of _____, 2015.

23
                                       By:_____
24                                          Honorable David K. Udall

25

26

5065734v1/26076-0001

# eSignature Page 1 of 1

Filing ID: 6901748   Case Number: CV2013-096393
Original Filing ID: 6901132

---

**Granted as Submitted**



/S/ David Udall Date: 9/30/2015
_____
Judicial Officer of Superior Court

## ENDORSEMENT PAGE

CASE NUMBER: CV2013-096393                    SIGNATURE DATE: 9/30/2015

E-FILING ID #: 6901748                        FILED DATE: 10/1/2015 8:00:00 AM


ELAN MIZRAHI


RICHARD ALBERT CRUZ


JESSICA OTTERMAN
NO ADDRESS ON RECORD

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
T. Hays, Deputy
10/5/2015 2:28:00 PM
Filing ID 6910911

1  Kevin D. Neal (Bar No. 011640)
   Lincoln Combs (Bar No. 025080)
2  Liana J. Garcia (Bar No. 027452)
   GALLAGHER & KENNEDY, P.A.
3  2575 East Camelback Road
   Phoenix, Arizona 85016-9225
4  Telephone:   (602) 530-8000
   Facsimile:    (602) 530-8500
5  kevin.neal@gknet.com
   lincoln.combs@gknet.com
6  liana.garcia@gknet.com

7  Marc J. Victor (Bar No. 016064)
   Marc J. Victor, P.C.
8  3920 S. Alma School Road, Suite 5
   Chandler, Arizona 85248
9  Telephone:  (480) 455-5233
   Fax:  (480) 857-0150
10 marc@attorneyforfreedom.com

11 Attorneys for Plaintiff Jessie Thornton

12            **SUPERIOR COURT OF THE STATE OF ARIZONA**

13                      **COUNTY OF MARICOPA**

14

15 JESSIE THORNTON,                      No. CV2013-096393

16                 Plaintiff,            **PLAINTIFF'S REPLY IN SUPPORT
                                         OF HIS MOTION FOR LEAVE TO
17 v.                                    AMEND COMPLAINT**

18 CITY OF SURPRISE, a jural entity; J.J.  (Assigned to the Honorable David K.
   OTTERMAN and JANE DOE                  Udall)
19 OTTERMAN, husband and wife; JOHN
   and JANE DOES I-X; BLACK and WHITE
20 CORPORATIONS I-X, inclusive,

21                 Defendants.

22

23         Plaintiff Jessie Thornton, through counsel, herein replies in support of his Motion

24 for Leave to Amend. The interests of justice demand that this Court allow Plaintiff leave

25 to amend, so the case may be litigated on its actual merits. Plaintiff was recently forced to

26 file a Motion to Compel Defendants to disclose relevant information related to Plaintiff's

   Complaint. It was only *after* filing the Motion to Compel that Defendants disclosed

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

significant and substantial evidence relevant to Plaintiff's Complaint. That evidence included independent reports, interviews, and statistical data supporting Plaintiff's proposed causes of action. Now, more than ever, Plaintiff is within his rights to amend.

Defendants' Response to Plaintiff's Motion to Amend asserts that "[p]laintiff has no more information today about his case than he did more than sixteen months ago when he first suggested he was going to amend his Complaint." Defendants' Response at p.4 ¶1. This statement is patently false. Just two weeks ago, on ***September 15, 2015***, in response to Plaintiff's Motion to Compel, Defendants disclosed a jump drive with substantial and voluminous relevant documents related to Plaintiff's lawsuit[1], including but not limited to:

- Two different investigative reports into Officer Otterman's stop and arrest of Plaintiff on December 7, 2012;
- Pertinent evidence revealed by the City of Surprise's investigation into Plaintiff's allegations of racial profiling;
- Recorded interviews with 37 different parties (some of whom gave multiple interviews);
- A 133-page report detailing the analysis and findings of an outside investigation firm's investigation into Plaintiff's allegations;
- 646 pages of evidentiary exhibits reviewed in conjunction with the City of Surprise's Professional Standards Unit's investigative report;
- 12 audio recordings (not including the interviews noted above) from various radio communications obtained from Plaintiff's December 7, 2012 traffic stop; and

---

[1] *See* Exhibit A, email exchange between Plaintiff's counsel and defense counsel beginning September 2, 2015 and concluding September 11, 2015, and letter dated September 15, 2011 from defense attorney Elan Mizrahi to Plaintiff's attorney Kevin Neal.

2

1      • 7 video recordings reviewed by Surprise Police Department's professional

2          Standards Unit and the outside investigation firm, Humphreys Investigation.

3      Moreover, on **September 30, 2015**, just last week, Defendants disclosed their

4  expert report prepared by CJ Police Consultants.[2] That report concludes that Defendant

5  Otterman "did not have probable cause to cite Mr. Thornton at the time of his arrest."

6  Exhibit B at p. 8 ¶ 3. Defendants' own expert report establishes four of the six essential

7  elements of Plaintiff's proposed causes of action V and VII alleging false imprisonment

8  and malicious prosecution.[3]

9      Defendants' Response to Plaintiff's Motion for leave to amend asserts that "there is

10 no scintilla of evidence" in support of Plaintiff's proposed causes of action for the

11 intentional torts alleged in his proposed amended complaint. In fact, Defendants' *own*

12 *expert* report (disclosed last week) establishes that Officer Otterman did not have probable

13 cause to cite Plaintiff for driving while impaired. See Exhibit B at p. 8. This is evidence

14 directly in support of Plaintiff's intentional tort theories for abuse of process, false arrest,

15 and malicious prosecution. Defendants' expert report also establishes that Officer

16 Otterman was not given proper training or supervision. Exhibit B at p. 8 ¶¶ 2, 3. This

17 conclusion directly supports the allegations contained in Plaintiff's Causes of Action for

18 his § 1983 claims. *See* Proposed Amended Complaint at ¶¶ 42, 51. Given the fact that

19 Defendants' own expert report conclusively establishes several elements of the causes of

20 action Plaintiff seeks to plead, it would be contrary to the interests of justice to deny

21

22 [2] See Exhibit B, Defendants' Third Supplemental Disclosure Statement.

23 [3] *See Slade v. City of Phoenix*, 112 Ariz. 298, 541 P.2d 550 (1975) "The essential
   elements of malicious prosecution are (1) a criminal prosecution, (2) that terminates in

24 favor of plaintiff, (3) with defendants as prosecutors, (4) actuated by malice, (5) without
   probable cause, and (6) causing damages. Closely related to malicious prosecution, but

25 distinct torts, are false arrest and false imprisonment. They may be defined as the
   detention of a person without his consent and without lawful authority." (internal citations

26 omitted).

3

1    Plaintiff leave to amend his Complaint.

2        This litigation was filed in 2013. Defendants should have disclosed the internal

3    investigation reports and supporting evidence consistent with their Rule 26.1 obligations

4    long ago. It is only within the last three weeks that Defendants have finally complied with

5    their disclosure and discovery obligations. Their late disclosure proves up several of the

6    essential elements of Plaintiff's causes of action as set forth in the proposed amended

7    complaint, yet Defendants would like this Court to believe that they would be the party

8    "prejudiced" by allowing Plaintiff leave to amend. Defendants' Response at p. 8 ¶¶ 1,2.

9        In fact, there is no prejudice to Defendants here.[4] They have been sitting on

10   relevant information for more than two years. They only disclosed the information after

11   Plaintiff filed his Motion to Compel.[5] Now, after disclosing relevant information that

12   would support Plaintiff's proposed causes of action, Defendants want to allege that *they*

13   would be prejudiced by allowing Plaintiff to amend his pleading to correspond with the

14   evidence they just produced. This does not satisfy the interests of justice, and is

15   inconsistent with this Court's case law.

16       Ariz. R. Civ. P. (15(a) provides that leave to amend "shall be freely given when

17   justice so requires." The Arizona Supreme Court directs that amendments be "liberally

18   allowed," *see Owen v Superior Ct*., 133 Ariz. 75, 79, 649 P.2d 278, 282 (1982), "so that

19   cases may be decided on the merits rather than on mere technicalities of pleadings. *Cagle*

20   *v. Carr*, 101 Ariz. 225, 227, 418 P.2d 381, 383 (1966).

21       Undue delay, by itself, is an insufficient ground for the denial of leave to amend.

22   *Owen*, 133 Ariz. at 79, 649 P.2d at 282. "Notice and *substantial* prejudice to the opposing

23   party are the critical factors in determining whether an amendment should be granted." *Id*.

24   _____

25   [4] Much less the "substantial" prejudice required under the law. *See Owen v. Superior Ct*., 133 Ariz. 75, 79, 649 P.2d 278, 282 (1982).

26   [5] Plaintiff voluntarily agreed to dismiss the Motion to Compel upon receipt of the documents produced by Defendants on September 15, 2015.

4

1   *(emphasis added).* More importantly an opponent "cannot be prejudiced by being forced

2   to litigate on the merits of [the movant's] claim." *Spitz v. Bache & Co, Inc.*, 122 Ariz. 530,

3   531, 596 P.2d 365, 366 (1979). And even where a party is prejudiced, the prejudice must

4   be balanced against the hardship to the moving party if leave to amend is denied. *Romo v.*

5   *Reyes*, 26 Ariz. App. 374, 376, 548 P.2d 1186 (App. 1976).

6          Defendants claim they will be prejudiced because allowing amendment would

7   expand Plaintiff's Complaint from one count to seven counts, may potentially result in a

8   removal of this case to Federal Court, and cause "the undoing of nearly two years of

9   litigation." *See* Defendants' Response to Motion for Leave to Amend at p. 5 ¶ 2.

10  Defendants also allege that allowing Plaintiff to add claims would "result in vast

11  attorneys' fees being added to a nominal damages claim, and would require the re-

12  evaluation of strategies for the case. *Id.*

13         In fact, allowing amendment would merely force Defendants to litigate the actual

14  merits of Plaintiff's claim. They cannot allege this is tantamount to prejudice. *Spitz. v.*

15  *Bache*, 122  Ariz. at 531, 596 P.2d at 366. Even if Defendants may be slightly prejudiced

16  by having to re-evaluate their defense strategy, this prejudice would pale in comparison to

17  the hardship Plaintiff would face if he were prevented from litigating his case fully and

18  fairly on its merits; especially given Defendants' dilatory response to their disclosure and

19  discovery obligations. Moreover, there is simply no reason the parties would have to "re-

20  do" two years of litigation in the event Defendants *choose* to remove the case to Federal

21  Court. The balance of hardships would tip sharply against Plaintiff if leave to amend is

22  denied.

23         Defendants would have this Court deny Plaintiff's motion for leave to amend so

24  they could enjoy the tactical advantage produced by their own very late disclosure of

25  relevant documents. This would be inconsistent with Arizona's case law favoring liberal

26  amendment of pleadings and resolution of cases on their merits. Such a result would also

be at odds with the interests of justice. Accordingly, Plaintiff respectfully moves this court to grant leave to amend his Complaint.

DATED this 5th day of September, 2015.

GALLAGHER & KENNEDY, P.A.

By: */s/ Kevin D. Neal*

Kevin D. Neal
Lincoln Combs
Liana J. Garcia
2575 East Camelback Road
Phoenix, Arizona  85016-9225
Attorneys for Plaintiff Jessie Thornton

COPY mailed same day to:

Larry J. Crown, Esq.
Elan S. Mizrahi, Esq.
TITUS, BRUECKNER & LEVINE PLC
8355 East Hartford Drive, Suite 200
Scottsdale, Arizona 85255
lcrown@tbl-law.com
elan@tbl-law.com
*Attorneys for Defendants*

Sharlee Weaver

6

# EXHIBIT A

# TITUS BRUECKNER & LEVINE PLC

## ATTORNEYS AT LAW

RECEIVED

SEP 1 6 2015

GALLAGHER & KENNE

8355 East Hartford Drive, Suite 200 · Scottsdale, AZ 85255
Office 480.483.9600 · Fax 480.483.3215 · www.tbl-law.com

Larry J. Crown
LCrown@tbl-law.com

Elan S. Mizrahi
elan@tbl-law.com

September 15, 2015

**HAND DELIVERED**

Kevin D. Neal, Esq.
Gallagher & Kennedy, PA
2575 East Camelback Road
Phoenix, AZ  85016-9225

Re:    *Thornton v. City of Surprise, et al.*
       Maricopa County Superior Court, Case No. CV2013-096393

Dear Kevin:

Enclosed please find a Supplemental Disclosure Statement and a thumb drive containing the referenced documents. I produced the entirety of the voluminous Humphrey Report and Chief Frazier's final findings and corrective action recommendations so I trust we no longer have a discovery dispute. If you believe we still have a discovery issue, please call either me or Larry.

Sincerely,

**TITUS BRUECKNER & LEVINE PLC**

Elan S. Mizrahi

ESM\kam
Enclosure
8962-004

## Garcia, Liana J.

| | |
|---|---|
| **From:** | Garcia, Liana J. |
| **Sent:** | Friday, September 11, 2015 2:26 PM |
| **To:** | Elan Mizrahi (Elan@tbl-law.com) |
| **Cc:** | Neal, Kevin D.; Weaver, Sharlee M. (sharlee.weaver@gknet.com); 'lcrown@tbl-law.com' (lcrown@tbl-law.com) |
| **Subject:** | FW: Thornton v Surprise |
| **Attachments:** | image001.gif; image001.gif |
| | |
| **Categories:** | #5047271 : 26076 : 0001 |

Hi Elan,
Tuesday is fine.
Have a good weekend --



Liana J. Garcia
Attorney Profile
liana.garcia@gknet.com
602-530-8172

---

**From:** Neal, Kevin D.
**Sent:** Friday, September 11, 2015 2:09 PM
**To:** Garcia, Liana J.
**Cc:** Weaver, Sharlee M.
**Subject:** Fwd: Thornton v Surprise

Please respond

Kevin

Sent from my iPhone

Begin forwarded message:

> **From:** Elan Mizrahi <Elan@tbl-law.com>
> **Date:** September 11, 2015 at 5:03:52 PM EDT
> **To:** Larry Crown <LCrown@tbl-law.com>, "kevin.neal@gknet.com" <kevin.neal@gknet.com>
> **Subject:** RE: Thornton v Surprise
>
> Kevin, Larry and I trying to assembling a bunch of documents to produce to you on a thumb drive but are having some difficulties. I am out on Monday for the Jewish holiday as is Larry so if I can't get it out to you today I will hand-deliver on Tuesday.  I just wanted to give you a heads-up as to where we are with this.   Thank you for your patience and courtesy.  Have a nice weekend.
>
>
> **Elan S. Mizrahi, Esq.**
> **TITUS BRUECKNER & LEVINE PLC**
> **8355 East Hartford Drive, Suite 200**
> **Scottsdale, Arizona 85255**

1

**Phone: 480.483.9600 | Fax: 480.483.3215**
**Email:** elan@tbl-law.com
**Website: www.tbl-law.com**

This email message contains information from the law firm Titus Brueckner & Levine PLC that may be confidential or privileged. Such information is intended only for the personal and confidential use of the designated recipient(s), and use by any other party is not authorized. If you are not an intended recipient, any review, disclosure, copying, distribution or use of this message, its contents, or any attachments is strictly prohibited. No responsibility is accepted by the sender for any loss or damage arising in any way from the use of this message or any attachments. If you have received this message in error, please notify the sender immediately, delete the message, and destroy all copies.  Unless otherwise indicated in the body of this message, nothing in this communication is intended to operate as an electronic signature under applicable law.

**From:** Larry Crown
**Sent:** Wednesday, September 02, 2015 11:35 AM
**To:** kevin.neal@gknet.com
**Cc:** Elan Mizrahi <Elan@tbl-law.com>
**Subject:** Thornton v Surprise

Kevin-

This confirms our conversation this past Friday, 8/28.

You kindly granted us an extension of 30 days to disclose our expert opinions.

Also, we are reviewing documents that are the subject of your motion to compel. We will provide you with documents within the next two weeks. Depending on whether we hold back certain documents under a privilege,
we will discuss with you. If necessary after that, a motion to compel can be refined to focus on such specific issue(s).

It was good talking to you. I greatly appreciate your courtesy on both these items as I was jammed Friday.

Regards,

Larry


**Larry J. Crown, Esq.**
**TITUS BRUECKNER & LEVINE PLC**
**8355 East Hartford Drive, Suite 200**
**Scottsdale, Arizona 85255**
**Phone: 480.483.9600 | Fax: 480.483.3215**
**Email:** lcrown@tbl-law.com
**Website: www.tbl-law.com**

This email message contains information from the law firm Titus Brueckner & Levine PLC that may be confidential or privileged. Such information is

EXHIBIT B

1   Elan S. Mizrahi (No. 017388)
    Larry J. Crown (SBN 013133)
2   **TITUS BRUECKNER & LEVINE PLC**
    8355 East Hartford Drive, Suite 200
3   Scottsdale, Arizona  85255
    Telephone:   480-483-9600
4   Facsimile:   480-483-3215
    Email:       elan@tbl-law.com
5                lcrown@tbl-law.com

6   *Attorneys for the City of Surprise*

7

8           **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9              **IN AND FOR THE COUNTY OF MARICOPA**

10

11  JESSIE THORNTON,                      Case No. CV2013-096393

12          Plaintiff,                    **CITY OF SURPRISE AND J.J.**
                                          **OTTERMAN'S THIRD**
13  vs.                                   **SUPPLEMENTAL RULE 26.1**
                                          **DISCLOSURE STATEMENT**
14  CITY OF SURPRISE, a jural entity;
    J.J. OTTERMAN and JANE DOE
15  OTTERMAN, husband and wife, et al.,   (Assigned to the Honorable David K.
                                          Udall)
16          Defendants.

17

18

19          Defendants City of Surprise and J.J. Otterman, by and through counsel undersigned,

20  and pursuant to Rule 26.1, Ariz.R.Civ.P., hereby submit their Third Supplemental Disclosure

21  Statement as follows:

22  **VI.     EXPERT WITNESSES**

23          Jack Harris, CJ Police Consulting
24          6022 East Anderson Drive
            Scottsdale, AZ  85243

25  **VIII.   EXHIBITS**

26          1.      Expert report from Jack Harris (attached).

27  ///

28

                                          - 1 -

*(left margin, vertical text)* **TITUS BRUECKNER & LEVINE PLC**
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

1    DATED this __30th__ day of September, 2015.

2                                        **TITUS BRUECKNER & LEVINE PLC**

3

4                                        By:_____
                                             Elan S. Mizrahi
5                                            Larry J. Crown
                                             *Attorneys for Defendant City of Surprise*
6

7    ORIGINAL of the foregoing emailed and
8    mailed on this __30th__ day of September,
     2015 to:
9
     Kevin D. Neal, Esq.
10   Lincoln Combs, Esq.
     Liana J. Garcia, Esq.
11   **GALLAGHER & KENNEDY, P.A.**
     2575 E. Camelback Road
12   Phoenix, AZ  85016-9225

13   and

14   COPY of the foregoing mailed on
     this __30th__ day of September, 2015 to:
15
     Marc J. Victor
16   Marc J. Victor, P.C.
     3920 S. Alma School Road, Suite 5
17   Chandler, AZ  85248

18   *Attorneys for Plaintiff*

19
     /s/ *Karin A. Meister*
20   _____
     8962-004
21

22

23

24

25

26

27

28

- 2 -

September 28, 2015

CJ Police Consulting
Jack F. Harris
6022 East Anderson Drive
Scottsdale, Arizona 85254

Elan Mizrahi
Titus Brueckner & Levine PLC.
8355 East Hartford Drive Suite 200
Scottsdale, Arizona 85255

Re: Thornton v. City of Surprise, et al.

Dear Mr. Mizrahi:

In formulating my opinion in this case I reviewed the following documents:

1. Notice of Claim dated April 22, 2013.
2. Complaint, CV20113-096393 dated December 6, 2013.
3. Defendant answer to complaint, dated February 7, 2014.
4. Plaintiff's Disclosure Statement (with attachments); dated April 11, 2013.
5. Plaintiff's Response to Defendants' Uniform Interrogatories; dated March 18, 2014.
6. Plaintiff's Response to Defendants' Non-Uniform Interrogatories; dated March 18, 2014.
7. Plaintiff's Response to Defendants' Request for Production of Documents and Things; dated March 19, 2014.
8. Radio recording of traffic stop.
9. Disclosure of expert witness opinions.
10. Deposition of Officer Joshua Otterman.
11. Deposition of Officer Quentin Boothe.
12. Deposition of Jessie Thornton.
13. Court transcripts from Surprise Municipal Court.
14. Surprise police report, 121202022.
15. Surprise Drug Influence Evaluation.
16. Surprise Vehicle Impound Report.
17. DPS Scientific Examination Report.
18. State's Motion to Dismiss.
19. Investigative interview of Officer Evan Becker.
20. Investigative interview of Officer Quentin Boothe.
21. Investigative interview of Garrick Boxberger.
22. Investigative interview of Andrew Brittin.
23. Investigative interview of Adam Brown.
24. Investigative interview of Norma Chavez.
25. Investigative interview of Fabiola Estrada.

1

26. Investigative interview of Kenny Halstead.
27. Investigative interview of Richard Hernandez.
28. Investigative interview of Lucas Jensen.
29. Investigative interview of Tim Klarkowski.
30. Investigative interview of Jason Lewis.
31. Investigative interview of Chris Martens.
32. Investigative interview of Nathaniel Miller.
33. Investigative interview of Joshua Otterman.
34. Investigative interview of Kara Tarleton.
35. Investigative interview of Frederick Porter.
36. Investigative interview of Quik Pik Towing personnel.
37. Investigative interview of Curt Raine.
38. Investigative interview of Michael Robbins.
39. Investigative interview of Megan Romanowski.
40. Investigative interview of Tim Schmit.
41. Investigative interview of Crystal Thornton.
42. Investigative interview of Jessie Thornton.
43. Investigative interview of Jakob Wageman.
44. Investigative interview of Jason Walker.
45. Investigative interview of Anna Weaver.
46. Investigation conducted by Jim Humphrey Consulting.

## Personal Background

I have thirty-nine years of law enforcement experience with the City of Phoenix Police Department in Phoenix, Arizona. During those thirty-nine years, I served as a Police Officer, Sergeant, Lieutenant, Commander, Assistant Police Chief, Police Chief, Public Safety Manager and Deputy City Manager. In those ranks I was assigned to at least seventeen different assignments that included, but are not limited to, patrol, undercover assignments in vice and narcotics, training, traffic, SWAT, internal affairs as well as a number of administrative assignments. Throughout my career I conducted formal employee investigations involving employee conduct. While assigned to the Professional Standards Bureau I was responsible for approximately one thousand (1,000), of the most serious employee conduct and officer involved shooting investigations in the department. As Police Chief I had responsibility for imposing discipline for misconduct involving approximately five thousand employees. I conservatively estimate that I have personally investigated or reviewed over three thousand (3,000) personnel investigations. I taught various subjects for over ten (10), years at the police training academy and served for over two years as the Basic Training Sergeant. I also taught tactics at the local, state, national and international level. I have been intimately involved in the formation and implementation of police policy for police agencies at all levels of law enforcement for four decades. There exists a body of knowledge regarding best practices for law enforcement officers throughout the nation. Through my vast law enforcement

2

experience, professional memberships and training I am generally familiar with accepted polices, training and procedures that govern police officer conduct.

## Incident Overview

On December 7, 2012, at approximately 11:16PM in the evening, Mr. Jessie Thornton was driving his personally owned vehicle in the area of west Bell Road, in the City of Surprise, Arizona. At that time he was stopped by an on-duty police officer, near the intersection of Bell Road and Bell Point Road. The officer conducting the traffic stop was Officer Joshua Otterman.

Officer Otterman had observed the vehicle driven by Mr. Thornton to have been weaving in and out of his lane three times while he was following the vehicle in his fully marked police cruiser. According to Officer Otterman, when he approached the driver's side of Mr. Thornton's vehicle, Mr. Thornton began yelling at him, advising him that he was not speeding. Officer Otterman, attempted to explain to Mr. Thornton that he did not stop him for speeding, but Mr. Thornton continued to yell he had not been speeding. Officer Otterman observed the eyes of Mr. Thornton were bloodshot and watery, an indicator of intoxication. Mr. Thornton exited the car and demonstrated a fighting stance.

Officer Otterman advised the police radio communications operator, he needed assistance, and Officers, Karlton and Hernandez responded to the request. Due to the aggressive behavior of Mr. Thornton, Officer Otterman and Officer Hernandez, handcuffed Mr. Thornton and had him sit on the curb. Officer Otterman observed the eyes of Mr. Thornton to be bloodshot and watery, but he did not smell of alcohol. During questioning, Mr. Thornton advised the officers he had taken 10 milligrams of Quinapril earlier in the day.

Officer Otterman believed Mr. Thornton was an impaired driver and requested that Mr. Thornton submit to a series of standard field sobriety tests, to further evaluate his ability to drive a motor vehicle. Mr. Thornton submitted to the examination and failed those tests. He was arrested and transported to the Surprise Police station where he was administered a breath test to determine the alcohol content of his blood. The BAC reading from that test registered .000, indicating no alcohol content at that time.

Officer Otterman believing Mr. Thornton was impaired by drugs, summoned Officer Boothe to his location to conduct an examination of Mr. Thornton. Officer Boothe was a Drug Recognition Expert (DRE), at that time. He conducted several tests of Mr. Thornton, and determined, in his opinion, Mr. Thornton was not under the influence of alcohol or drugs. He advised Officer Otterman of his findings and returned to his normal duties.

Officer Otterman, still believed Mr. Thornton was impaired due to the drug he had taken earlier in the day. He had blood drawn from Mr. Thornton and submitted that sample to the Arizona Department of Public Safety Crime Lab for analysis. He then cited Mr. Thornton for driving

3

while impaired and released Mr. Thornton to his wife, who had been called to the police station to take custody of her husband.

The results of the submission to the crime lab was negative and the charges were later dismissed.

## Details of the incident

On December 7, 2012 at approximately 11:16PM Officer Otterman stopped a white Mitsubishi vehicle at approximately the intersection of West Bell Road and Bell Point Road in the city of Surprise, Arizona. Officer Otterman had observed the vehicle weaving several times out of the lane it was travelling in, (Deposition of Officer Otterman, Pg. 42).

Officer Otterman approached the vehicle and spoke with the driver, later identified as a Mr. Jessie Thornton. Officer Otterman advised Mr. Thornton the reason for the traffic stop was due to his failure to drive in one lane. According to Office Otterman, Mr. Thornton began yelling that he was not speeding. Officer Otterman advised him several times the reason for the traffic stop was not for speeding but for failing to maintain his vehicle in one lane, (Otterman deposition, Pg. 59).

During his contact with Mr. Thornton, Officer Otterman noticed Mr. Thornton had bloodshot and watery eyes. He also noticed that Mr. Thornton did not smell of alcohol. He asked Mr. Thornton to exit his vehicle. When he exited the vehicle, he took a fighting stance according to Officer Otterman. Officer Otterman advised the police radio dispatcher he needed assistance and Officers Karlton and Hernandez responded, (Officer Otterman deposition, Pg. 62).

Officer Otterman decided to handcuff Mr. Thornton because he was yelling and had taken a fighting stance when he exited his vehicle. Officer Hernandez assisted in the cuffing of Mr. Thornton. They then had him sit on the curb. After Mr. Thornton calmed down, he was asked to perform the field sobriety tests and he complied, (Deposition of Officer Otterman, Pg. 65). Officers Hernandez and Karlton observed Mr. Thornton as he attempted the field tests. Officer Otterman, determined that Mr. Thornton had not successfully completed the field tests and he was placed under arrest.

During questioning at the location of the traffic stop, Mr. Thornton advised Officer Otterman he had taken 10 milligrams of a prescription drug, Quinapril earlier in the day, (Deposition of Officer Otterman, Pg. 77). Officer Otterman felt that he had probable cause to arrest Mr. Thornton for driving while impaired. He based that on the fact he had observed Mr. Thornton driving in and out of his lane several times, that Mr. Thornton could not see to understand why he was stopped, and his admission he had taken Quinapril. He had also observed that Mr. Thornton had bloodshot and watery eyes.

4

Mr. Thornton was transported to the Surprise Police Department, where he submitted to a breathalyzer test to determine his blood alcohol content. That test was administered by Officer Otterman. The test result was .000. That reading indicated there was no alcohol in his blood at that time. Following the reading, Officer Otterman called Officer Boothe to the station. Officer Boothe was a certified Drug Recognition Expert.

Officer Boothe was asked to evaluate Mr. Thornton to determine if he was possibly under the influence of drugs or alcohol. Officer Boothe conducted an examination of Mr. Thornton and determined in his opinion, Mr. Thornton was not under the influence of alcohol or drugs at that time. Officer Boothe relayed his opinion to Officer Otterman, (Deposition of Officer Otterman, Pg. 107).    Officer Boothe also shared the results of his examination of Mr. Thornton with the supervisor of Officer Otterman, Sergeant Klarkowski, (Deposition of Officer Boothe, Pg. 52).

Mr. Thornton agreed to submit to a blood draw and a sample was taken and submitted to the Arizona Department of Public Safety (DPS), Crime Lab for analysis. Mr. Thornton was cited and released to his wife who had been called to the station to retrieve him.

The results of the blood analysis conducted by the DPS lab were negative for alcohol and drugs. The citation issued to Mr. Thornton was dismissed by the Surprise City Court. The Arizona Department of Transportation, Motor Vehicle Division, conducted an administrative hearing in reference to the suspension of the driving privleges of Mr. Thornton. It was determined that Officer Otterman had reasonable grounds to believe, that Mr. Thornton was driving under the influence of drugs or alcohol when operating a motor vehicle on the night the traffic stop occurred. However, the order of his license suspension was vacated by the Administrative Judge, Kathleen T. McCoy following the lab test results.

During his deposition, Officer Otterman was asked, if he cited Mr. Thornton, pending the results of the lab test of his blood sample, Officer Otterman replied, "No. The reason why I issued the citation is because I had probable cause for his—for his arrest for that statute based on evidence that I had obtained on scene." He was then asked, "Are you telling me that, in your opinion, Jessie Thornton was impaired by drugs at the time you conducted you investigation at the scene but was not impaired by drugs at the time Officer Boothe conducted his investigation at the police department?" Officer Otterman replied, "I guess--yes. That's my opinion."(Officer Otterman deposition, Pg. 113).

### Opinions

In my opinion, Officer Otterman had probable cause to stop the vehicle driven by Mr. Thornton on the night of December 7, 2012. Officer Otterman observed several violations of Arizona Revised Statutes 28-729.1, failure to drive in one lane. He had observed Mr. Thornton weave out of his lane on three occasions while following him.

When Officer Otterman, contacted Mr. Thornton, he attempted several times to explain the reason for the traffic stop. Mr. Thornton continued to yell at Officer Otterman, telling him that he was not speeding. Mr. Thornton did not appear to understand why he was being detained and continued to yell at the officer. When asked to exit the vehicle, Mr. Thornton stood in a fighting stance, according to Officer Otterman. Officer Otterman observed the eyes of Mr. Thornton to be bloodshot and watery. It is my opinion, that failure to drive in one lane, failure to understand the reason for the stop, bloodshot and watery eyes of a driver, constitutes reasonable grounds for the officer to conduct further field sobriety tests.

In my opinion, after Mr. Thornton failed the field sobriety tests in the presence of three officers, combined with the factors of bloodshot and watery eyes, aggressive behavior, failure to drive in one lane, failure to understand why he was stopped and an admission he had taken a prescription drug, gave Officer Otterman probable cause to arrest Mr. Thornton.

In my opinion, Officer Otterman acted appropriately when he transported Mr. Thornton to the police station and administered a breathalyzer test. It was also appropriate for Officer Otterman to request an officer who is a certified Drug Recognition Expert to conduct further tests on Mr. Thornton. When the breathalyzer test resulted in a .000 reading for alcohol, it would be common practice, for an officer to request a DRE certified officer, to further test the person for the influence of drugs.

When Officer Otterman received the opinion from Officer Boothe, that Mr. Thornton was not under the influence of alcohol or drugs, it is my opinion, that, Officer Otterman should have waited for the crime lab test results, before citing Mr. Thornton. Since Mr. Thornton, was a local resident, there was not a reasonable expectation, that Mr. Thornton would not be available, to receive a citation at a later date, if the test returned positive.

It is my opinion that after reviewing the circumstances surrounding this event, Sergeant Klarkowski, should have advised Officer Otterman to release Mr. Thornton and wait for the lab results prior to issuing Mr. Thornton a citation. In my opinion, Sergeant Klarkowski erred when he advised Officer Otterman to cite Mr. Thornton for driving while under the influence of drugs. In light of the evaluation by Officer Boothe, and the lack of probable cause, to substantiate the charge of DUI drugs.

Mr. Thornton felt he had been targeted by officers of the Surprise Police Department, because of the number of times he has been stopped. Reasoning for this assertion, is that he has been repeatedly stopped for speeding, when he felt he had not been speeding. During his deposition, Mr. Thornton described ten times that he has been stopped by officers of the Surprise Police Department. He was asked, "--My question is, is it your contention that on those other ten occasions, the police officer that stopped you had no basis to stop you, in your opinion?" He answered, "Not for what he accused me of." (Deposition of Mr. Thornton, Pg. 12). In addition to the ten traffic stops by various Surprise police officers, Mr. Thornton stated he had also been stopped three times by officers from the Peoria Police Department, and several times by officers from the Sherriff's Office, and possibly Glendale Police Department,

6

(Deposition of Mr. Thornton, Pg.115). He further stated he was cited for speeding by the Sheriff's Office and for failure to yield from a private drive, resulting in an accident, (Peoria Police Department). He stated he was also cited by officers from the Sheriff's Office for speeding, (75mph. in a 45mph. zone and for weaving,) (Deposition of Mr. Thornton, Pg. 117). In my opinion, it is very unusual in my experience as an experienced traffic officer (5 years as a motorcycle officer and over 500 arrests for DUI), for a person to be stopped a minimum of 15 times by various officers representing four different police departments. It is also my opinion, that it would be extremely unlikely that multiple officers from four different departments would all be prejudiced against one individual.

Officer Otterman stated in his deposition, he did not complete the box on the report which identifies the race of the individual that is the subject of the report. His reasoning was if he did not ask the individual what race he identified with, he did not complete the box. In my opinion, Officer Otterman should complete the question of race on police reports if the race of the individual is obvious. If the race of the individual is not obvious, Officer Otterman should always ask, and then complete the form. In my opinion, this is a minor training issue, unless Officer Otterman is intentionally not filling in the box on all reports. I have not reviewed any information that would indicate not completing the information in reference to race is intentional or a continuing problem with Officer Otterman.

In his deposition, Mr. Thornton, stated, several Surprise police officers had advised him that Surprise police officers, would always cite for speed, in excess of five miles per hour over the posted speed limit. I did not see any evidence or policy to suggest that statement is accurate. Arizona Revised Statute 28-701.A is for speed that is unreasonable or imprudent. In my opinion, under this statute, five miles per hour could be reasonable. For example, fifty miles per hour in a forty five mile zone, may be reasonable at three o'clock in the morning, with no other traffic in the area. However, it may be unreasonable at five o'clock in the afternoon, during rush hour traffic. In my opinion, the wording of this statute, prevents a police department, from having a set policy for a speed, which would at all times trigger a citation.

## Conclusions

It is indeed unfortunate Mr. Thornton has been stopped on as many as fifteen occasions, (Estimate of Mr. Thornton), for traffic related offences. However, to surmise that multiple police officers, from the Surprise Police Department, were targeting Mr. Thornton due to his race, does not seem reasonable or validated by the facts. It should also be noted, the administrative investigation conducted by Jim Humphrey, found there were only seven documented traffic stops involving Mr. Thornton.

Mr. Thornton admitted to being stopped at least fifteen times, by multiple officers from four different police agencies. He had been cited from officers representing different police agencies, for speeding, weaving, and failure to yield, causing an accident. Mr. Thornton, claims he had been targeted because of his race, by officers of the Surprise Police Department, but does not feel he was targeted by officers from other agencies that cited him for traffic

violations.  On many occasions, the Surprise police officers, warned him for the violation but did not cite him.   Mr. Thornton feels Surprise police officers were prejudiced even though they released him with a warning, but officers from other agencies, are not prejudiced, when they stopped him and cited him.

Officer Otterman, at the time of the arrest of Mr. Thornton, was a relatively inexperienced police officer, (this was his first arrest for DUI drugs).  The citing of Mr. Thornton, in the face of the evaluation by a certified DRE expert, and failing to fill in the box on his report related to race, does not indicate racism, in my opinion.  Officer Otterman had probable cause to arrest Mr. Thornton on suspicion of driving while under the influence of drugs.  He followed proper police procedure and protocol by transporting him to the police station for evaluation and testing.  He sought out advice from his supervisor about how to proceed following the evaluation of Officer Boothe.  He followed his advice, and cited Mr. Thornton.

I did not see any Surprise Police Department procedure in place, at the time of the arrest of Mr. Thornton, which would preclude Officer Otterman, from citing Mr. Thornton, without waiting for the conclusion of the lab test.  However, it is my opinion, that Officer Otterman did not have probable cause to cite Mr. Thornton at the time of his arrest.  He received poor direction from his supervisor, and he should have awaited the results of the lab test before citing Mr. Thornton.

If you receive any additional materials pertinent to this case that may help me in my review please forward them to me as you receive them.  I will provide further opinion if requested.

I state under penalty of perjury that I authored the forgoing report and know the contents thereof, and that the same are true and correct to the best of my knowledge.

Sincerely,

Jack F. Harris

Jack F. Harris

8

**Curriculum Vitae**
**Jack F. Harris**

**Experience**
Police Consultant 2012 – Present
Phoenix Police Department Phoenix, Arizona
Police Chief 2004-2011 Functional supervision of over4500 employees.
Deputy City Manager, City of Phoenix 2007-2011 Served as Police Chief and Public Safety
Manager with expanded responsibility for security for the light rail system, homeland security
and emergency management programs.
While employed with the police department from 1972-2011 served in over 17 positions and
seven ranks.  Positions included assignments in Field Operations, Special Investigations, SWAT,
Traffic, Training, Professional Standards, Supervisory, Administrative, Command and Executive
functions.
**Education**
Phoenix College- Associate of Arts -Criminal Justice
Arizona State University-Bachelor of Science –Public Administration
Arizona State university-Certified Public Manager-Graduate
Ottawa University-Masters-Human Resources
Federal Bureau of Investigation-FBI National Academy-Graduate-National Executive Institute-
Graduate
**Affiliations**
Federal Bureau of Investigation National Academy Associates
National Association of Certified Public Managers
Police Executive Research Forum
Arizona Association of Chiefs of Police
International Association of Chiefs of Police
ASIS International
Fraternal Order of Police
**Professional Recognition**
Lifetime Achievement Award-Arizona Governor Janet Napalotano
Lifetime Achievement Award-Fraternal Order of Police
National Leadership Award-Police Executive Research Forum
Selected to Phoenix College Hall of Fame
**Teaching Experience**
1975-2011 Arizona Law Enforcement Academy
1980-1990 Arizona Police Officer Training Board

9

1989-1992 Phoenix College and Mesa College Adjunct Instructor
1993 ICITAP Taught Police Tactics to Police Officers in Mogadishu, Somalia
2008 Presentation for National Sherriff's Association in Orlando, Florida
2010 Presented as subject matter expert on kidnapping and hostage rescue for London
Metropolitan Police in the United Kingdom

**Community Activities**
United States Marine Corp Scholarship Foundation-Current board Member and former Board
Chair
Child Help-current Advisory Board Member
La Casa De Cristo Lutheran Church- Chair of Men's Ministry

### Fee Schedule

Case Review and Preparation-$250 per hour.
Deposition and Court Testimony:
$1500 for up to 4 hours.  $250 per hour for additional hours. Payable in advance.
$100 per hour for actual travel time.
Reimbursement for all travel expenses.
Reimbursement for all other related expenses.

### Previous Case Testimony

William Furniss v. City of Glendale, Arizona et al (CV- 2010-028700).
United States v. Colorado City, Arizona and Hildale, Utah (CV-12-8123-PCT-HRH).
Campbell/Wilson et, al v. Town of Buckeye, Arizona (CV-2013-010107).
I have also been retained on ten other cases that are in various stages of litigation.

### Previous Opinions

Furniss v. City of Glendale, Arizona et al CV 2010-028700
Lively v. Town of Prescott Valley, Arizona CV 2013-00869
Thornton v. City of Surprise, Arizona CV 2013-096393
Brewer v. City of Show Low, Arizona CV 2013-00297
Newman v. City of Show Low, Arizona Police Department et al
Deanda v. Gradias et al, Somerton, Arizona
Lara v. City of Surprise, Arizona et al CV 2013-010568
United States of America v. Town of Colorado City, Arizona No.3:12 CV 8123 HRH (Prescott
Division)
Karunyan v. Hanover et al, CV-10-00198-Phx-Ros
Campbell/Wilson v. Town of Buckeye, Arizona CV 2013-010107

10

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
10/12/2015 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-096393                                            10/07/2015

                                           CLERK OF THE COURT
HON. DAVID K. UDALL                              K. Tiero
                                                  Deputy

JESSIE THORNTON                         RICHARD ALBERT CRUZ

v.

CITY OF SURPRISE, et al.                ELAN MIZRAHI

                                        JESSICA OTTERMAN
                                        NO ADDRESS ON RECORD

**MINUTE ENTRY**

       The Court has received and reviewed the Plaintiff's Motion for Leave to Amend
Complaint, the Defendants' Response and the Plaintiff's Reply thereto.

       IT IS ORDERED granting the Plaintiff's Motion for Leave to Amend Complaint.

       IT IS FURTHER ORDERED that Plaintiff shall file the Amended Complaint **by October
27, 2015.**

Michael K Jeanes, Clerk of Court
*** Electronically Filed ***
D. Sandoval, Deputy
10/26/2015 2:06:00 PM
Filing ID 6959278

Kevin D. Neal (Bar No. 011640)
Lincoln Combs (Bar No. 025080)
Liana J. Garcia (Bar No. 027452)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:    (602) 530-8000
Facsimile:    (602) 530-8500
kevin.neal@gknet.com
liana.garcia@gknet.com

Marc J. Victor (Bar No. 016064)
Marc J. Victor, P.C.
3920 S. Alma School Road, Suite 5
Chandler, Arizona 85248
Telephone:  (480) 455-5233
Fax:  (480) 857-0150
marc@attorneyforfreedom.com

Attorneys for Plaintiff Jessie Thornton

**SUPERIOR COURT OF THE STATE OF ARIZONA**

**COUNTY OF MARICOPA**

| | |
|---|---|
| JESSIE THORNTON,<br><br>               Plaintiff,<br><br>v.<br><br>CITY OF SURPRISE, a jural entity; J.J. OTTERMAN and JANE DOE OTTERMAN, husband and wife; JANE DOES I-X; BLACK and WHITE CORPORATIONS I-X, inclusive,<br><br>               Defendants. | No. CV2013-096393<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>(Assigned to the Honorable David K. Udall) |

Plaintiff JESSIE THORNTON, by and through undersigned counsel, for his

Complaint against Defendants, alleges as follows:

      1.     At all times material hereto, Plaintiff JESSIE THORNTON was a resident

of Maricopa County.

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

1        2.      Upon information and belief, at all times material hereto, Defendant J.J.

2   OTTERMAN was a resident of Maricopa County.

3        3.      At all times material hereto, Defendant J.J. OTTERMAN was acting in his

4   capacity as an employee of the City Defendant through his employment with the Surprise

5   Police Department and the City Defendant is liable for the acts of its employees under the

6   legal theory of *respondeat superior*.

7        4.      Defendant CITY OF SURPRISE is a jural entity subject to suit.

8        5.      At all times material to Plaintiff's Complaint, Defendants J.J. OTTERMAN

9   and the CITY OF SURPRISE were acting under the color of state law.

10       6.      Plaintiff, JESSIE THORNTON, served a Notice of Claim in compliance

11  with A.R.S. § 12-8201.01 upon the appropriate individuals on April 30, 2013.

12       7.      Plaintiff, JESSIE THORNTON, complied with the Notice of Claim

13  requirements under State law perfecting his right to pursue a claim before this court.

14       8.      Defendant Jane Doe Otterman is a fictitious name for the spouse of

15  defendant J.J. OTTERMAN.  Plaintiff will seek leave of the Court to amend this

16  Complaint to set forth the true identities of this person once it becomes known.

17       9.      Defendants John and Jane Does I-X, Black Corporations I-X, and White

18  Partnerships I-X are persons or entities whose names are not currently known to Plaintiff

19  but who are responsible to Plaintiff for the acts complained of herein.  Plaintiff will seek

20  leave of the court to amend his Complaint to set forth the true identities of those persons

21  or entitles once they become known.

22       10.     All events giving rise to this cause of action occurred in the County of

23  Maricopa, State of Arizona, making jurisdiction and venue proper in this court.

24

25

26

2

1                         **COUNT I – NEGLIGENCE; GROSS NEGLIGENCE**

2       11.    Plaintiff JESSIE THORNTON incorporates herein the allegations in the

3 preceding paragraphs.

4       12.    Since 2009 to the present, Plaintiff JESSIE THORNTON has been subjected

5 to continuous and systematic racial profiling and harassment by the Surprise Police

6 Department, a subpart of the City Defendant.

7       13.    This systematic harassment included an incident in which Plaintiff JESSIE

8 THORNTON was cited for failing to have a license in his possession, when at the time of

9 the stop, JESSIE THORNTON's license was in his gym bag in the backseat of the car he

10 was driving, and the Surprise Police Officer would not allow him to retrieve it.

11       14.    Police officers employed by Defendant CITY OF SURPRISE, acting under

12 color of law, have followed, stopped, arrested, charged, and/or cited Plaintiff JESSIE

13 THORNTON approximately 8 times (to date) during the time period of 2009 to the

14 present, despite lacking the reasonable suspicion required to stop Plaintiff, or the probable

15 cause necessary to arrest, charge, or cite Plaintiff JESSIE THORNTON.

16       15.    This pattern of unconstitutional and unlawful stops, arrests, and citations

17 constitutes an unlawful policy and custom of violating Plaintiff's federally protected

18 constitutional rights.

19       16.    On or about December 7, 2012, this systematic harassment culminated when

20 Plaintiff JESSIE THORNTON was taken into custody by Defendant J.J. OTTERMAN.

21       17.    On or about December 7, 2012, Plaintiff JESSIE THORNTON was

22 unlawfully stopped by Defendant J.J. OTTERMAN, who knowingly lacked the required

23 reasonable suspicion to stop JESSIE THORNTON's vehicle.

24       18.    On or about December 7, 2012, Defendant J.J. OTTERMAN claimed that

25 Plaintiff JESSIE THORNTON's eyes were bloodshot, but at the time, Plaintiff JESSIE

26

1    THORNTON was wearing glasses and Defendant J.J. OTTERMAN could not clearly see

2    his eyes.

3         19.    On or about December 7, 2012, during the stop, Defendant J.J.

4    OTTERMAN was intentionally aggressive with Plaintiff JESSIE THORNTON and failed

5    to conduct a proper DUI investigation.

6         20.    On or about December 7, 2012, Defendant J.J. OTTERMAN performed a

7    series of field sobriety tests on Plaintiff JESSIE THORNTON, but intentionally failed to

8    consider information provided by Plaintiff JESSIE THORNTON that he had knee and hip

9    injuries, which severely affected Plaintiff's ability to perform field sobriety tests.

10        21.    On or about December 7, 2012, Defendant J.J. OTTERMAN arrested

11   Plaintiff JESSIE THORNTON despite knowingly having insufficient probable cause to do

12   so.

13        22.    Upon information and belief, Plaintiff JESSIE THORNTON maintained

14   throughout the traffic stop and unlawful arrest that he was not impaired and had consumed

15   no alcohol or drugs other than his blood pressure medication, which would not cause

16   impairment.

17        23.    On or about December 7, 2012, Defendant J.J. OTTERMAN took Plaintiff

18   into custody and transported Plaintiff to the Surprise Police Station, despite lacking

19   probable cause to arrest and seize Plaintiff.

20        24.    On or about December 7, 2012, Defendant J.J. OTTERMAN had Plaintiff

21   JESSIE THORNTON submit to an intoxylizer test, the results of which showed Plaintiff

22   JESSIE THORNTON's blood alcohol content at 0.000.

23        25.    On or about December 7, 2012, Officer Boothe, a trained drug recognition

24   expert with Surprise Police Department, evaluated Plaintiff JESSIE THORNTON and

25   found him to be both cordial and cooperative, determined that Plaintiff exhibited no signs

26

4

of impairment, and concluded that Plaintiff was not under the influence of any drugs or alcohol.

26.     Officer Boothe conveyed these findings and conclusions to Defendant J.J. OTTERMAN.

27.     On or about December 7, 2012, despite Officer Boothe's evaluation and findings, Defendant J.J. OTTERMAN forced Plaintiff JESSIE THORNTON to submit to a blood draw, despite lacking probable cause to force Plaintiff to submit to such a seizure.

28.     Plaintiff JESSIE THORNTON's blood results came back indicating no presence of drugs or alcohol.

29.     On or about December 7, 2012, Defendant J.J. OTTERMAN, with full knowledge and reckless disregard for Plaintiff's federally protected rights, charged Plaintiff JESSIE THORNTON with Driving Under the Influence of alcohol or drugs, despite lacking the probable cause for such a criminal charge.

30.     Defendant J.J. OTTERMAN, with the full knowledge, consent, and encouragement of his supervisors at the CITY OF SURPRISE, initiated criminal proceedings against Plaintiff JESSIE THORNTON, despite lacking any objective or reasonable basis to do so.

31.     Defendant J.J. OTTERMAN'S decision to proceed with criminal charges against Plaintiff – despite knowing there was no reason to believe Plaintiff was guilty of the elements of that crime – displayed a willful, malicious, and callous disregard for Plaintiff's federally protected constitutional rights.

32.     Defendant J.J. OTTERMAN'S actions were undertaken with the full knowledge and consent of his supervisors at the CITY OF SURPRISE, who had instituted a custom or defacto policy of unconstitutional stops and arrests.

5

33. Plaintiff JESSIE THORNTON was forced to retain counsel to represent him, as a result of Defendant J.J. OTTERMAN's wrongful charging, and the City of Surprise's wrongful and malicious prosecution.

34. On or about February 5, 2013, the court dismissed the case against Plaintiff JESSIE THORNTON.

35. On or about April 17, 2013, the Honorable Ruth H. Hillard with the Superior Court of Arizona granted a petition submitted by Plaintiff JESSIE THORNTON finding him innocent of charges an clearing his record pursuant to A.R.S. § 13-4051.

36. Plaintiff JESSIE THORNTON was subjected to intentional harassment and racial discrimination by Defendant J.J. OTTERMAN and the CITY OF SURPRISE.

**COUNT II – 42 U.S.C. § 1983 – VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS**

37. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

38. At all times, Defendant J.J. OTTERMAN was acting under the color of law.

39. At all times, Defendant J.J. OTTERMAN was acting in the course and scope of his employment as a police officer for the City of Surprise.

40. While in the course and scope of his employment with the City of Surprise, and acting under the color of law, Defendant J.J. OTTERMAN violated Plaintiff's Fourth Amendment rights under the United States Constitution, when he unreasonably and unlawfully detained Plaintiff and seized his blood, property, and person without sufficient constitutional basis to do so.

41. THE CITY OF SURPRISE is liable for Defendant J.J. OTTERMAN'S unlawful violation of Plaintiff's Fourth Amendment rights because it fostered a custom and de facto policy of unconstitutional stops and arrests.

6

42.     THE CITY OF SURPRISE is also liable for Defendant J.J. OTTERMAN'S unlawful violation of Plaintiff's Fourth Amendment rights because it failed to adequately train Defendant J.J. OTTERMAN.

43.     The conduct of Defendant J.J. OTTERMAN and the CITY OF SURPRISE deprived Plaintiff of his constitutionally established rights to be free from unlawful search and seizure, and proximately caused him to incur damages, including costs, attorneys' fees, humiliation, property damage, physical pain, and mental anguish.

**COUNT III – 42 U.S.C. § 1983 – VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS**

44.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

45.     At all times, Defendant J.J.OTTERMAN was acting under the color of law.

46.     At all times, Defendant J.J. OTTERMAN was acting in the course and scope of his employment as a police officer for the City of Surprise.

47.     Plaintiff, an African-American, is a member of a protected class.

48.     While in the course and scope of his employment with the City of Surprise, and acting under the color of law, Defendant J.J. OTTERMAN violated Plaintiff's Fourteenth Amendment rights when he denied Plaintiff the equal protection of the law by improperly stopping, seizing, arresting, and charging Plaintiff with driving under the influence of drugs or alcohol, and seizing Plaintiff's property when he had no reasonable, constitutional basis to do so.

49.     Defendant J.J. OTTERMAN'S unconstitutional actions toward Plaintiff were committed with the intent or purpose to harass and discriminate against Plaintiff based on Plaintiff's membership in a protected class.

50.     The CITY OF SURPRISE is liable for Defendant J.J. OTTERMAN'S unlawful violation of Plaintiff's Fourteenth Amendment rights because it fostered a

7

1   custom and de facto policy of unconstitutional stops and arrests targeting African-

2   Americans.

3       51.     Moreover, the CITY OF SURPRISE is liable for Defendant J.J.

4   OTTERMAN'S unlawful violation of Plaintiff's Fourteenth Amendment rights because it

5   failed to adequately train Defendant J.J. OTTERMAN.

6       52.     The conduct of Defendant J.J. OTTERMAN and the CITY OF SURPRISE

7   deprived Plaintiff of his constitutionally established right to be treated the same under the

8   law as similarly-situated Caucasians, and proximately caused him damages and injuries,

9   including costs, attorneys' fees, humiliation, property damage, physical pain, and mental

10  anguish.

11      **COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

12      53.     Plaintiff re-alleges and incorporates by reference the allegations set forth in

13  the preceding paragraphs of this Complaint as if fully set forth herein.

14      54.     Defendant J.J.OTTERMAN stopped, detained, arrested, and charged

15  Plaintiff with driving under the influence of drugs or alcohol, despite the fact that he had

16  no reasonable suspicion upon which to base the stop, and no probable cause upon which

17  to base the arrest or the criminal charge.

18      55.     Defendant J.J.OTTERMAN'S conduct was extreme and outrageous, and his

19  behavior in charging an innocent man with criminal conduct despite the absence of

20  probable cause was done with reckless disregard of the certainty that his conduct would

21  cause Plaintiff severe emotional distress.

22      56.     As a result of Defendant J.J.OTTERMAN'S extreme, outrageous, and

23  unlawful conduct, Plaintiff experienced extreme emotional distress, anguish, upset, panic

24  attacks, feelings of paranoia, and a constant suspicion that he is being "watched" by the

25  police and can no longer trust the police to protect his person or property.

26

8

57.     As a result of the CITY OF SURPRISE'S failure to properly train Defendant J.J.OTTERMAN, Plaintiff experienced extreme emotional distress, anguish, upset, panic attacks, feelings of paranoia, and a constant suspicion that he is being "watched" by the police and can no longer trust the police to protect his person or property.

58.     As a result of the CITY OF SURPRISE'S custom and de facto policy of treating African-Americans differently than similarly situated Caucasians by fostering a practice of unconstitutional stops targeting African-Americans, Plaintiff experienced extreme emotional distress, anguish, upset, panic attacks, feelings of paranoia, and a constant suspicion that he is being "watched" by the police and can no longer trust the police to protect him.

## COUNT V – FALSE IMPRISONMENT

59.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

60.     Defendant J.J.OTTERMAN acted intentionally to restrain Plaintiff to an area within Defendants' control by unlawfully arresting and detaining Plaintiff, without legal authority to do so.

61.     Defendant J.J.OTTERMAN acted without lawful constitutional authority and without Plaintiff's consent.

62.     Defendant J.J.OTTERMAN'S unlawful and intentional act resulted in the direct restraint of Plaintiff's liberty by actual force.

63.     Defendant J.J.OTTERMAN act in restraining Plaintiff would have caused a reasonably prudent person in Plaintiff's situation to believe that he was detained and unable to leave Defendants' custody.

64.     Defendant CITY OF SURPRISE intentionally instigated, encouraged, and participated in Defendant J.J.OTTERMAN'S false imprisonment of Plaintiff because it

9

fostered a practice and de facto policy of improperly stopping, charging, and arresting African American citizens without a lawful constitutional basis to do so.

65.    Defendant CITY OF SURPRISE actively encouraged, instigated, and participated in Defendant J.J.OTTERMAN'S false imprisonment of Plaintiff by failing to properly train Defendant J.J.OTTERMAN.

66.    As a result of Defendants' unlawful false imprisonment, Plaintiff was harmed. Plaintiff experienced mental suffering, anguish, humiliation, physical discomfort, inconvenience, and incurred monetary loss and property damage.

## COUNT VI – ABUSE OF PROCESS

67.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

68.    Defendants J.J.OTTERMAN and the CITY OF SURPRISE willfully used the legal process primarily to accomplish an ulterior purpose for which it was not designed. Specifically, Defendants used the legal process to harass and intimidate Plaintiff and other African-American citizens within their jurisdiction.

69.    Defendants' abuse of the legal process against Plaintiff was not reasonably justifiable in light of the circumstances, and can only be explained by Defendants' improper purpose to harass and intimidate Plaintiff.

70.    Defendants' abuse of the legal process was performed with ill will, and caused humiliation, emotional distress, anguish, property damage, and monetary loss to Plaintiff.

## COUNT VII – MALICIOUS PROSECUTION

71.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

10

72. Defendants J.J.OTTERMAN and CITY OF SURPRISE initiated and took active part in the prosecution of a criminal action against Plaintiff, which terminated in Plaintiff's favor.

73. In initiating criminal prosecution against Plaintiff, Defendants J.J. OTTERMAN and the CITY OF SURPRISE acted with malice and without probable cause.

74. Specifically, Defendant J.J. OTTERMAN proceeded to charge Plaintiff with driving while impaired by drugs or alcohol, despite the fact that he had no reasonable basis to believe Plaintiff was guilty of the elements of that crime.

75. Defendant CITY OF SURPRISE, despite the fact that it was aware of the facts and the law, chose to continue prosecution of the criminal action against Plaintiff, causing Plaintiff to incur substantial costs to clear his driving record and criminal record.

76. The malicious conduct of Defendants J.J. OTTERMAN and THE CITY OF SURPRISE caused humiliation, emotional distress, anguish, property damage, and monetary loss to Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For Plaintiff's nominal, general and compensatory damages;

2. For Plaintiff's special damages incurred to date and to be incurred in the future for necessary medical and other related expenses;

3. For Plaintiff's damages for physical injuries, mental anguish, humiliation, emotional distress, physical and mental pain and suffering and limitation of normal activities, both past and future, in an amount to be proven at trial.

4. For Plaintiff's costs incurred herein;

5. For pre-judgment and post-judgment interest at the maximum legal rate allowed by the Court;

11

5101449v1/26076-0001

1        6.      For Plaintiff's Attorneys' fees pursuant to 42 U.S.C. § 1988(b);

2        7.      For punitive damages against Defendant J.J. Otterman due to his reckless

3  and callous indifference to Plaintiff's federally protected rights; and

4        8.      For such other and further relief as the Court deems just and proper.

5        DATED this 26th day of October, 2015.

6                                              GALLAGHER & KENNEDY, P.A.

7

8                                      By:  */s/ Kevin D. Neal*

9                                              Kevin D. Neal
                                               Lincoln Combs
10                                             Liana J. Garcia
                                               2575 East Camelback Road
11                                             Phoenix, Arizona  85016-9225
                                               Attorneys for Plaintiff Jessie Thornton
12

13

14  COPY mailed same day to:

15  Larry J. Crown
    Elan S. Mizrahi
16  Titus Brueckner & Levine, PLC
    8355 E. Hartford Drive, Suite 200
17  Scottsdale, AZ 85255
    *Attorneys for Defendants*
18
    Sharlee Weaver
19

20

21

22

23

24

25

26

                                        12

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
11/02/2015 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-096393                                    10/28/2015


                                         CLERK OF THE COURT
HON. DAVID K. UDALL                              K. Tiero
                                                 Deputy



JESSIE THORNTON                          KEVIN D NEAL

v.

CITY OF SURPRISE, et al.                 ELAN MIZRAHI



                                         JESSICA OTTERMAN
                                         NO ADDRESS ON RECORD


**TELEPHONIC TRIAL SCHEDULING CONFERENCE RESET**


        On the Court's own Motion, due to a calendaring conflict,

        **IT IS ORDERED** vacating the telephonic Trial Scheduling Conference set on January 8, 2016 at 1:30 p.m. and resetting same to **January 8, 2016 at 9:15 a.m. (15 minutes allotted)** before:

                        HONORABLE DAVID K. UDALL
                        SOUTHEAST ADULT FACILITY
                        222 EAST JAVELINA - COURTROOM 205
                                MESA AZ 85210

        **NOTE:** Counsel for the Plaintiff is to initiate the telephonic conference by first arranging the presence of all other counsel or self-represented parties on the conference call and by calling this Division at (602) 506-5514 promptly at the scheduled time.

        **IT IS FURTHER ORDERED** if the parties settle the matter, they shall contact this Division so the hearing can be vacated.


Docket Code 083                    Form V000A                           Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-096393                                              10/28/2015


**NOTE**:  **All court proceedings are recorded by audio and video method and not by a court reporter.  Pursuant to Local Rule 2.22, if a party desires a court reporter for any proceeding in which a court reporter is not mandated by Arizona Supreme Court Rule 30, the party must submit a written request to the assigned judicial officer at least ten (10) judicial days in advance of the hearing, and must pay the authorized fee to the Clerk of the Court at least two (2) judicial days before the proceeding.  The fee is $140 for a half-day and $280 for a full day.**